Brian A. Knutsen, WSBA No. 38806
Emma Bruden, WSBA No. 56280
KAMPMEIER & KNUTSEN, PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
Tel.: (503) 841-6515 (Knutsen)
          (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com
            emma@kampmeierknutsen.com

Simone Anter, WSBA No. 52716
COLUMBIA RIVERKEEPER
P.O. Box 920
Hood River, Oregon 97031
Tel.: (541) 399-5312
Email: simone@columbiariverkeeper.org

*Attorneys for Plaintiff Columbia Riverkeeper*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLUMBIA RIVERKEEPER, a Washington non-profit corporation, | |
| Plaintiff, | Case No. 3:23-cv-05818 |
| v. | COMPLAINT |
| THE NEIL JONES FOOD COMPANY, a Washington corporation, and THE NEIL JONES FOOD COMPANY d/b/a Northwest Packing Company, a Washington corporation, | |
| Defendants. | |

## I.  INTRODUCTION

1.  This action is a citizen suit brought under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, as amended. Plaintiff Columbia Riverkeeper ("Riverkeeper") seeks declaratory and injunctive relief, the imposition of civil penalties, and the award of costs,

including attorneys' and expert witness fees for Defendants the Neil Jones Food Company and the Neil Jones Food Company d/b/a/ Northwest Packing Company (collectively "Defendants") repeated and ongoing violations of the terms and conditions of their National Pollutant Discharge Elimination System ("NPDES") permit authorizing discharges of pollutants from Defendants' facility to waters of the United States.

## II.     JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under section 505(a) of the CWA, 33 U.S.C. § 1365(a) (CWA citizen suit provision), and 28 U.S.C. § 1331 (federal question). Defendants are in violation of an "effluent standard or limitation" as defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f). The relief requested herein is authorized by sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365 and 28 U.S.C. §§ 2201 and 2202.

3.      In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Riverkeeper notified Defendants and Defendants' registered agent of Defendants' violations of Defendants' NPDES permits and of Riverkeeper's intent to sue under the CWA, by letter dated and postmarked July 5, 2023 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in sections II–IX of the Notice Letter, attached hereto as Exhibit 1 at 3–17, are hereby incorporated by reference. Riverkeeper also notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of Washington Department of Ecology ("Ecology") by mailing copies to the Notice Letter to those officials on July 5, 2023.

4.      At the time of the filing of this complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

COMPLAINT - 2
Case No. 3:23-cv-05818

5.      The violations complained of in the Notice Letter are continuing and/or reasonably likely to recur. Defendants are in violation of Defendants' NPDES permit.

6.      At the time of the filing of this complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

7.      The source of the violations complained of is located in Clark County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

### III.      PARTIES

8.      Plaintiff Columbia Riverkeeper is suing on behalf of itself and its members. Riverkeeper is a 501(c)(3) non-profit corporation registered in the State of Washington. The mission of Riverkeeper is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. To achieve these objectives, Riverkeeper implements scientific, educational, and legal programs aimed at protecting water quality and habitat in the Columbia River Basin. This lawsuit is part of Riverkeeper's effort to improve water quality in the Columbia River Basin for purposes including recreation, habitat quality, and subsistence, recreational, and commercial fishing.

9.      Riverkeeper has representational standing to bring this action. Riverkeeper has over 16,000 members, many of whom reside in the vicinity of waters affected by Defendants' discharges of pollutants. Members of Riverkeeper use and enjoy the waters and the surrounding areas that are adversely affected by Defendants' discharges. Riverkeeper's members use these areas for, *inter alia*, fishing, swimming, hiking, walking, photography, boating, and observing wildlife. Defendants have consistently violated the conditions of their NPDES permits and exceeded the permits' benchmark pollutant discharge levels. Riverkeeper has serious concerns

COMPLAINT - 3
Case No. 3:23-cv-05818

about the impacts of Defendants' operations and industrial stormwater discharges on the Columbia River. Defendants' operations and stormwater discharges degrade water quality in the Columbia River Basin. The environmental, health, aesthetic, and recreational interests of Riverkeeper's members have been, are being, and will be adversely affected by Defendants' NPDES permit violations addressed herein and by the members' reasonable concerns related to the effects of the violations and pollutant discharges. These injuries are fairly traceable to the violations and redressable by this Court.

10.     Riverkeeper also has organizational standing to bring this action. Riverkeeper actively engages in a variety of educational and advocacy efforts to improve water quality in the Columbia River and its tributaries. Defendants have failed to fulfill their monitoring, recordkeeping, reporting, public disclosure, and planning requirements, among others, necessary for compliance with their NPDES permits. As a result, Riverkeeper is deprived of information that supports its ability to serve its members by disseminating information and taking appropriate action. Riverkeeper's efforts to educate and advocate for greater environmental protection for the benefit of its members is thereby obstructed. Thus, Riverkeeper's organizational interests have been adversely affected by Defendants' violations. These injuries are fairly traceable to Defendants' violations and redressable by this Court.

11.     Defendant the Neil Jones Food Company is a corporation organized and existing under the laws of the State of Washington. Defendant the Neil Jones Food Company does business as Northwest Packing Company.

12.     Defendants own and operate an industrial facility at or near 1701 West 16th Street, Vancouver, Washington 98660 (hereinafter "the Facility"). Defendants' Facility is on land and adjacent to the Columbia River. Defendants' Facility discharges stormwater associated with industrial activity, and pollutants contained therein, to the Columbia River.

COMPLAINT - 4
Case No. 3:23-cv-05818

KAMPMEIER & KNUTSEN PLLC
1300 SE Start Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

#### IV.    LEGAL BACKGROUND

13.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person unless authorized under certain provisions of the CWA, including an NPDES permit issued pursuant to section 402 of the CWA, 33 U.S.C. § 1342.

14.    The State of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to section 402(b) of the CWA, 33 U.S.C. § 1342(b).

15.    Ecology has issued several iterations of the Industrial Stormwater General Permit ("General Permit") under section 402(a) of the CWA, 33 U.S.C. § 1342(a), the most recent of which was issued on November 20, 2019, became effective on January 1, 2020, and is set to expire on December 31, 2024 (the "2020 General Permit"). The previous iteration was issued on December 3, 2014, became effective on January 2, 2015, and expired on December 31, 2019 (the "2015 General Permit"). The General Permit, in its various iterations since its first issuance in 1993, all of which contain comparable requirements, authorizes those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

16.    The 2015 General Permit and the 2020 General Permit (collectively, "General Permits") impose terms and conditions, including discharge monitoring and sampling requirements, reporting and recordkeeping requirements, public disclosure requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the General Permits require, among other things, that permittees develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") that includes appropriate

COMPLAINT - 5
Case No. 3:23-cv-05818

best management practices ("BMPs") and that applies all known and reasonable methods of pollution prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the General Permits are described in detail in sections II–IX of the Notice Letter, attached hereto as Exhibit 1 at 3–17.

## V.    FACTS

17.    Defendants were granted coverage for the Facility under the 2015 General Permit for that permit's effective date of January 2, 2015 through its expiration on December 31, 2019 under NPDES Permit Number WAR001129. Defendants were granted coverage under the 2020 General Permit on its effective date of January 1, 2020 and maintains the same NPDES Permit Number WAR001129.

18.    Defendants discharge stormwater associated with industrial activity and other pollutants into the Columbia River via tributaries and/or stormwater conveyance systems.

19.    Defendants have violated the terms and conditions of the General Permits. Defendants' violations of the General Permits are set forth in sections II through IX of the Notice Letter, attached hereto as Exhibit 1 at 3–17, and are incorporated herein by this reference. In particular, and among the other violations described in the Notice Letter, Defendants have violated the General Permits by failing to monitor discharges, develop and implement a SWPPP with adequate BMPs to control stormwater quality, timely complete adaptive management responses, and timely submit complete and accurate reports.

20.    The General Permits require Defendants to monitor stormwater discharges in a manner that is representative of discharges from the Facility. The stormwater monitoring data described in Table 1, below, are the stormwater monitoring results that Defendants submitted to Ecology on discharge monitoring reports ("DMRs") under the requirements of the General Permits. Defendants have discharged stormwater containing levels of pollutants that exceed the

COMPLAINT - 6
Case No. 3:23-cv-05818

benchmark values established by the General Permits, including on the days on which

Defendants collected samples with the results identified in bold in Table 1, below.

| Table 1: Defendants' Stormwater Monitoring Data | | | | | |
|---|---|---|---|---|---|
| **Monitoring Period** | **Turbidity** Benchmark: 25 NTU | **Oil Sheen** Benchmark: no | **Total Copper** Benchmark: 14 µg/L | **Total Zinc** Benchmark: 117 µg/L | **Nitrate/Nitrite** Benchmark: 0.68 mg/L |
| 1st Quarter 2017 | 5.99 | No | 0 | 26.1 | 0 |
| 2nd Quarter 2017 | 1.61 | No | 3.26 | 40.2 | .059 |
| 3rd Quarter 2017 | 24.7 | No | 11.3 | 98.8 | 0 |
| 4th Quarter 2017 | 16 | No | 13.8 | **195** | 0 |
| 1st Quarter 2018 | 17.7 | No | 5.55 | 69.1 | 0 |
| 2nd Quarter 2018 | **27** | No | **19.1** | **154** | 0 |
| 3rd Quarter 2018 | ND | ND | ND | ND | ND |
| 4th Quarter 2018 | N/A | N/A | N/A | N/A | N/A |
| 1st Quarter 2019 | 5.24 | No | 7.98 | **122** | 0 |
| 2nd Quarter 2019 | **27** | No | 11.4 | 114 | 0 |
| 3rd Quarter 2019 | 17.29 | No | 11.9 | 95.9 | 0 |
| 4th Quarter 2019 | 10.4 | No | 4.03 | 68.2 | 0 |
| 1st Quarter 2020 | E | E | **H | 23.1** | **H | 364** | **.932** |
| 2nd Quarter 2020 | J | 0 | J | 0 | **J | 27.0** | **H | 221** | J | .472 |
| 3rd Quarter 2020 | E | E | **22.0** | **175** | .1 |
| 4th Quarter 2020 | E | E | E | E | E |
| 1st Quarter 2021 | E | E | E | E | E |
| 2nd Quarter 2021 | ND | ND | ND | ND | ND |
| 3rd Quarter 2021 | ND | ND | ND | ND | ND |
| 4th Quarter 2021 | E | E | E | E | E |
| 1st Quarter 2022 | E | E | **16.4** | **372** | .091 |
| 2nd Quarter 2022 | E | E | 11.1 | **139** | **1.54** |
| 3rd Quarter 2022 | ND | ND | ND | ND | ND |
| 4th Quarter 2022 | **80.2; 94.6 Average: 87.4** | J | **18.9; 22.1 Average: 20.5** | 286; 248 Average: 267 | B | .05; .247 Average: .1485 |
| 1st Quarter 2023 | **48.7** | **Yes** | **21.4** | **245** | **1.4** |
| 2nd Quarter 2023 | ND | ND | ND | ND | ND |

Monitoring results shown in **Bold** exceed the Permits' benchmarks
J: DMR represents the monitoring result was below the quantitation level
B: DMR represents the monitoring result was below the detection limit/no detection
ND: DMR represents that there was no discharge from the facility
E: DMR represents that an analysis was not complete/not conducted/not reported
H: DMR represented estimated value is "greater than"
N/A: No DMR in file

21.    Defendants' exceedances of the benchmark values indicate that Defendants are

failing to apply AKART to their discharges and/or are failing to implement an adequate SWPPP

COMPLAINT - 7
Case No. 3:23-cv-05818

KAMPMEIER & KNUTSEN PLLC
1300 SE Start Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

and BMPs. Upon information and belief, Defendants are in violation of the General Permits by not developing and/or implementing a SWPPP that includes appropriate BMPs in accordance with the requirements of the General Permits, by not applying AKART to discharges, by not implementing BMPs necessary to prevent discharges from contributing to violations of water quality standards in the receiving waters, and by discharging in a manner that contributes to violations of water quality standards. These requirements, and Defendants' violations thereof, are described in detail in sections II and III of the Notice Letter, attached hereto as Exhibit 1 at 3–8, and are incorporated herein by this reference.

22.     Defendants have violated the monitoring requirements of the General Permits. For example, as indicated in Table 1, above, Defendants have failed to collect, analyze, and report discharge samples during each calendar quarter as required by the General Permits. Defendants failed to collect stormwater samples at any of their discharge points during the following quarterly monitoring periods: third and fourth quarters of 2018; fourth quarter of 2020; first, second, third, and fourth quarter of 2021; third quarter of 2022; and second quarter of 2023. Defendants have also violated and continues to violate these conditions because the Facility discharges from distinct points of discharge that are not monitored and that are not substantially identical to those outfalls that are monitored by Defendants. These requirements of the General Permits, and Defendants' violations thereof, are described in detail in section IV.A of the Notice Letter, attached hereto as Exhibit 1 at 8, and are incorporated herein by this reference.

23.     Defendants have further failed to analyze quarterly samples in the manner required, including by failing to analyze discharge samples for the parameters as identified in Table 2 below, which includes instances where Defendants have improperly claimed analysis was not required under the General Permits' consistent attainment provisions.

COMPLAINT - 8
Case No. 3:23-cv-05818

| Table 2: Pollutant Parameters Not Analyzed | |
|---|---|
| **Monitoring Period** | **Parameters Not Analyzed** |
| 3rd Quarter 2018 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 4th Quarter 2018 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 1st Quarter 2020 | turbidity, pH, oil sheen, and $BOD_5$ |
| 2nd Quarter 2020 | turbidity and oil sheen |
| 3rd Quarter 2020 | turbidity, pH, and oil sheen |
| 4th Quarter 2020 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 1st Quarter 2021 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 2nd Quarter 2021 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 3rd Quarter 2021 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 4th Quarter 2021 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 1st Quarter 2022 | turbidity, pH, and oil sheen |
| 2nd Quarter 2022 | turbidity, pH, and oil sheen |
| 3rd Quarter 2022 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 4th Quarter 2022 | oil sheen |
| 1st Quarter 2023 | pH |
| 2nd Quarter 2023 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |

These requirements, and Defendants' violations thereof, are described in section IV.B of the Notice Letter, attached hereto as Exhibit 1 at 8–9, and are incorporated herein by this reference.

24.     Defendants have violated the visual monitoring requirements of the General Permits. For example, upon information and belief, Defendants have failed to conduct visual monitoring at each location where stormwater associated with industrial activity is discharged and the Defendants have failed to prepare visual monitoring reports/checklists that include all required information, including identification of all locations inspected. These requirements, and Defendants' violations thereof, are described in section IV.C of the Notice Letter, attached hereto as Exhibit 1 at 9–10, and are incorporated herein by this reference.

KAMPMEIER & KNUTSEN PLLC
1300 SE Start Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

25.     Defendants have violated the timely reporting requirements of the General Permits. As examples, Defendants have failed to submit a DMR for the fourth quarter of 2018; have failed to submit DMRs within the time prescribed for the first, second, third, and fourth quarters of 2020, the first, second, third, and fourth quarters of 2021, first, third, and fourth quarters of 2022, and first quarter of 2023; have failed to timely submit annual reports for the 2018 monitoring year (due May 15, 2019), 2019 monitoring year (due May 15, 2020), 2020 monitoring year (due May 15, 2021); and have failed to submit an annual report for the 2022 monitoring year (due May 15, 2023). These requirements, and Defendants' violations thereof, are described in section IV.D of the Notice Letter, attached hereto as Exhibit 1 at 10, and are incorporated herein by this reference.

26.     Defendants have violated the signing and certification requirements of the General Permits. As examples, Defendants have violated these requirements by failing to have a responsible corporate officer or duly authorized representative sign and certify Defendants' annual reports for the 2018 monitoring year (due May 15, 2019), the 2019 monitoring year (due May 15, 2020), the 2020 monitoring year (due May 15, 2021), the 2021 monitoring year (due May 15, 2022), and the 2022 monitoring year (due May 15, 2023); upon information and belief, Defendants have violated these requirements for every quarterly DMR required under the General Permits in the last five years because Defendants did not submit a DMR for the fourth quarter of 2018 that was signed and certified, and because for the DMRs Defendants have submitted throughout the past five years, those who signed and certified those DMRs, including Mark Dee, Kyle Bussey, Don Carr, and Erich Blancaflor were not and are not responsible corporate officers or duly authorized representatives. These requirements, and Defendants' violations thereof, are described in section IV.E of the Notice Letter, attached hereto as Exhibit 1 at 10–11, and are incorporated herein by this reference.

27. Defendants have not conducted and/or completed the corrective action responses as required by the General Permits. These requirements of the General Permits, and Defendants' violations thereof, are described in section V of the Notice Letter, attached hereto as Exhibit 1 at 11–14, and are incorporated herein by this reference.

28. The General Permits require a permittee to undertake a Level 1 corrective action whenever contamination in the permittee's stormwater discharge exceeds a benchmark level. A Level 1 corrective action comprises reviewing the SWPPP to ensure permit compliance; revising the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges; signing and certifying the revised SWPPP; summarizing the Level 1 corrective action in the annual report; and fully implementing the revised SWPPP as soon as possible, but no later than the discharge monitoring report due date for the quarter the benchmark was exceeded. The 2020 General Permit requires the implementation of any Level 1 corrective actions triggered under the 2015 General Permit.

29. Defendants triggered a Level 1 corrective action for each benchmark exceedance identified in Table 1, above. Defendants have violated the requirements of the General Permits by failing to conduct a Level 1 corrective action in accordance with permit conditions each time since and including the second quarter of 2018 that Defendants' quarterly stormwater sampling results were greater than a benchmark for turbidity, oil sheen, zinc, copper, and nitrate + nitrite, including the benchmark excursions listed in Table 1, above. These corrective action requirements, and Defendants' violations thereof, are described in section V.A. of the Notice Letter, attached hereto as Exhibit 1 at 11–12, and are incorporated herein by this reference.

30. The General Permits require a permittee to undertake a Level 2 corrective action whenever its discharges exceed a particular benchmark value for any two quarters during a calendar year. A Level 2 corrective action comprises reviewing the SWPPP to ensure permit

COMPLAINT - 11
Case No. 3:23-cv-05818

KAMPMEIER & KNUTSEN PLLC
1300 SE Start Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

compliance; revising the SWPPP to include additional structural source control BMPs with the goal of achieving the benchmark in future discharges; signing and certifying the revised SWPPP; summarizing the Level 2 corrective action (planned or taken) in the annual report; and fully implementing the revised SWPPP by August 31 of the following year, including installation of necessary structural source control BMPs. The 2020 General Permit requires the implementation of any Level 2 correction actions triggered under the 2015 General Permit.

31.    Defendants triggered Level 2 corrective action requirements for pollutant parameters as indicated by the benchmark exceedances in Table 1, above. Defendants violated the requirements of the General Permits described above by failing to conduct Level 2 corrective actions in the manner required each time Defendants' stormwater sampling results triggered the requirements of a Level 2 corrective action under the provisions of the General Permits since and including 2017. These corrective action requirements, and Defendants' violations thereof, are described in section V.B of the Notice Letter, attached hereto as Exhibit 1 at 12–13, and are incorporated herein by this reference.

32.    The General Permits require a permittee to undertake a Level 3 corrective action whenever the permittee's discharges exceed a benchmark value for any three quarters during a calendar year. This is the most comprehensive adaptive management provision under the General Permits. A Level 3 corrective action comprises reviewing the SWPPP to ensure permit compliance; revising the SWPPP to include additional treatment BMPs with the goal of achieving benchmarks in future discharges (and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of the treatment BMPs); signing and certifying the revised SWPPP; summarizing the Level 3 corrective action in the annual report, including information on how monitoring, assessment, or evaluation was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced or if new/additional

COMPLAINT - 12
Case No. 3:23-cv-05818

treatment BMPs will be installed; and fully implementing the revised SWPPP as soon as practicable and no later than September 30 of the following year, including installation of necessary treatment BMPs. A specified professional must review the revised SWPPP, sign the SWPPP certification form, and certify that it is reasonably expected to meet benchmarks upon implementation. Before installing any BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, the permittee must submit an engineering report, certified by a licensed professional engineer, to Ecology for review. The report must contain: (1) a brief summary of the treatment alternatives considered and why the proposed option was selected, including cost estimates of ongoing operation and maintenance and disposal of any spent media; (2) the basic design data, including characterization of stormwater influent and sizing calculations for the treatment units; (3) a description of the treatment process and operation, including a flow diagram; (4) the amount and kind of chemicals used in the treatment process, if any; (5) the expected results from the treatment process including the predicted stormwater discharge characteristics; (6) a statement, expressing sound engineering justification—through the use of pilot plant data, results from similar installations, and/or scientific evidence—that the proposed treatment is reasonably expected to meet the permit benchmarks; and (7) certification by a licensed professional engineer. The engineering report must be submitted no later than the May 15 prior to the Level 3 corrective action deadline. The permittee must also submit an operations and maintenance manual to Ecology at least 30 days after construction/installation is complete.

33.     Defendants triggered Level 3 corrective action requirements for pollutant parameters as indicated by the benchmark exceedances in Table 1, above. Defendants violated the requirements of the General Permit described above by failing to conduct Level 3 corrective action(s) in the manner required each time Defendants' stormwater sampling results triggered the

COMPLAINT - 13
Case No. 3:23-cv-05818

KAMPMEIER & KNUTSEN PLLC
1300 SE Start Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

requirements of a Level 3 corrective action under the provisions of the General Permits since and including 2017. These corrective action requirements, and Defendants' violations thereof, are described in section V.C of the Notice Letter, attached hereto as Exhibit 1 at 13–14, and are incorporated herein by this reference.

34.     The General Permits require Defendants to submit an accurate and complete annual report to Ecology no later than May 15 of each year that includes specific information. Defendants have violated these requirements by failing to timely submit annual reports that include all of the required information for each year since and including 2018 (which annual report was due May 15, 2019). These annual report requirements, and Defendants' violations thereof, are described in section VI of the Notice Letter, attached hereto as Exhibit 1 at 15–16, and are incorporated herein by this reference.

35.     Upon information and belief, Defendants have failed to comply with recording and record keeping requirements of the General Permits. These requirements, and Defendants' violations thereof, are described in section VII of the Notice Letter, attached hereto as Exhibit 1 at 16, and are incorporated herein by this reference.

36.     The General Permits require a permittee to take certain reporting and other responsive actions each time the permittee violates any terms and conditions of the General Permits in a manner that may endanger human health or the environment. Defendants have repeatedly violated these requirements, including each and every time during the last five years and sixty days that Defendants: failed to comply with corrective action requirements, discharged stormwater with concentrations of pollutants that are likely to cause or contribute to violations of water quality standards, and failed to collect and/or analyze discharge samples as required by the General Permits. These requirements, and Defendants' violations thereof, are described in

KAMPMEIER & KNUTSEN PLLC
1300 SE Start Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

section VIII of the Notice Letter, attached hereto as Exhibit 1 at 16–17, and are incorporated herein by reference.

37.     The General Permits provide that, upon request from the public, permittees must produce a copy of or access to the permittee's SWPPP within fourteen days of the request. As described in section IX of the Notice Letter, attached hereto as Exhibit 1 at 17 and incorporated herein by this reference, Riverkeeper requested a copy of or access to Defendants' complete SWPPP in the Notice Letter dated July 5, 2023. On August 21, 2023, Defendants provided Riverkeeper a copy of the complete SWPPP for the Facility.

38.     The violations alleged herein are ongoing because they are continuing and/or are reasonably likely to recur. For example, Defendants' failure to timely and fully complete corrective actions are continuing violations and their repeated occurrence throughout the limitations period indicates that such violations are likely to recur. Similarly, Defendants' repeated exceedances of benchmarks indicates that Defendants are continuing to fail to develop and implement an adequate SWPPP. Further, Defendants have yet to submit complete, accurate, and timely annual reports, DMRs, or reports of permit violations as required under the General Permits, which constitute continuing violations.

39.     Discharges from Defendants' Facility contribute to the polluted conditions of the waters of the United States, including the Columbia River. Discharges from Defendants' Facility contribute to the ecological impacts that result from the polluted condition of these waters and to Riverkeeper's and its members' injuries resulting therefrom.

40.     The vicinity of the Facility's discharges are used by the citizens of Washington and Oregon and visitors, as well as at least one of Riverkeeper's members, for activities including swimming, boating, biking, fishing and nature watching. Riverkeeper's member(s) also derive(s) aesthetic benefits from the receiving waters. Riverkeeper's and its members' enjoyment

KAMPMEIER & KNUTSEN PLLC
1300 SE Start Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

of these activities and waters is diminished by the polluted state of the receiving waters and by Defendants' contributions to such a polluted state.

41.     A significant penalty should be imposed against Defendants under the penalty factors set forth in section 309(d) of the CWA, 33 U.S.C. § 1319(d).

42.     Defendants' violations were avoidable had Defendants been diligent in overseeing the Facility's operations and maintenance.

43.     Defendants have benefited economically as a consequence of their violations and their failure to implement improvements at the Facility.

44.     In accordance with section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4, Riverkeeper will mail either a filed, date-stamped copy of this complaint or a conformed copy of this complaint after it is filed to the Administrator of the EPA, the Regional Administrator for Region 10 of the EPA, and the Attorney General of the United States.

## VI.     CAUSE OF ACTION

45.     The preceding paragraphs and the allegations in sections II through IX of the Notice Letter, attached hereto as Exhibit 1 at 3–17, are incorporated herein by this reference.

46.     Defendants' violations of the General Permits described herein and in the Notice Letter constitute violations of an "effluent standard or limitation" as defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f).

47.     Upon information and belief, these violations committed by Defendants are continuing or are reasonably likely to continue to recur. Any and all additional violations of the General Permits that occur after the date of Riverkeeper's Notice Letter, but before a final decision in this action, should be considered continuing violations subject to this complaint.

COMPLAINT - 16
Case No. 3:23-cv-05818

KAMPMEIER & KNUTSEN PLLC
1300 SE Start Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

48.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendants are likely to continue to violate the General Permits to the further injury of Riverkeeper, its member(s), and the public.

## VII.   RELIEF REQUESTED

Wherefore, Riverkeeper respectfully requests that this Court grant the following relief:

A.     Issue a declaratory judgment that Defendants violated, and continue to be in violation of, the General Permits;

B.     Enjoin Defendants from operating the Facility in a manner that results in further violations of the General Permits;

C.     Order Defendants to immediately implement a SWPPP that complies with the General Permits;

D.     Order Defendants to provide Riverkeeper, for a period beginning on the date of the Court's Order and running for one year after Defendants achieve compliance with all of the conditions of the General Permits, with copies of all reports and other documents that Defendants submit to or receive from Ecology and/or EPA regarding Defendants' coverage under the General Permits, at the same time those documents are submitted to or received from Ecology and/or EPA;

E.     Order Defendants to take specific actions to remediate the environmental harm caused by their violations;

F.     Grant such other preliminary and/or permanent injunctive relief as Riverkeeper may from time to time request during the pendency of this case;

G.     Order Defendants to pay civil penalties as authorized by sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

KAMPMEIER & KNUTSEN PLLC
1300 SE Start Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

1      H.     Award Riverkeeper its litigation expenses, including reasonable attorneys' and

2 expert witness fees, as authorized by section 505(d) of the CWA, 33 U.S.C. § 1365(d), or as

3 otherwise authorized by law; and

4      I.     Award such other relief as this Court deems appropriate.

5      RESPECTFULLY SUBMITTED this 11th day of September 2023.

6

7                 KAMPMEIER & KNUTSEN, PLLC

8                 By: s/ Brian A. Knutsen

9                 Brian A. Knutsen, WSBA No. 38806
                By:  s/ Emma A. O. Bruden

10                 Emma A. O. Bruden, WSBA No. 56280
                1300 S.E. Stark Street, Suite 202

11                 Portland, Oregon 97214

12                 Tel: (503) 841-6515 (Knutsen)
                    (503) 719-5641 (Bruden)

13                 Email: brian@kampmeierknutsen.com
                     emma@kampmeierknutsen.com

14

15                 COLUMBIA RIVERKEEPER

16                 By:  s/ Simone Anter

17                 Simone Anter, WSBA No. 52716
                 P.O. Box 920

18                 Hood River, Oregon 97031
                Tel.: (541) 399-5312

19                 Email: simone@columbiariverkeeper.org

20                 *Attorneys for Plaintiff Columbia Riverkeeper*

21

22

23

24

25

26

27

28

# Exhibit 1

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

EMMA A. O. BRUDEN
Licensed in Oregon & Washington
503.719.5641
emma@kampmeierknutsen.com

July 5, 2023

**Via CERTIFIED MAIL – Return Receipt Requested**

| | |
|---|---|
| Managing Agent | Managing Agent |
| Neil Jones Food Co. | Neil Jones Food Co. |
| 1701 West 16th Street | P.O. Box 30 |
| Vancouver, Washington 98660 | Vancouver, Washington 98666-0030 |
| | |
| Managing Agent | Managing Agent |
| Neil Jones Food Co. | Neil Jones Food Co. |
| d/b/a Northwest Packing Co. | d/b/a Northwest Packing Co. |
| 1701 West 16th Street | P.O. Box 30 |
| Vancouver, Washington 98660 | Vancouver, Washington 98666-0030 |
| | |
| Managing Agent | Managing Agent |
| Northwest Packing Co. | Northwest Packing Co. |
| 1701 West 16th Street | P.O. Box 30 |
| Vancouver, Washington 98660 | Vancouver, Washington 98666-0030 |

Re:   **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND
REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

This letter is submitted on behalf of Columbia Riverkeeper, 2621 Wasco Street, Suite A, Hood River, Oregon 97031. This letter provides you with sixty days' notice of Columbia Riverkeeper's intent to file a citizen suit against Neil Jones Food Co., Neil Jones Food Co. d/b/a Northwest Packing Co., and Northwest Packing Co. (collectively "Neil Jones") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C § 1365, for the violations described below. This letter also requests a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Neil Jones' National Pollution Discharge Elimination System ("NPDES") permit.

Neil Jones was granted coverage under the previous iteration of Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") on December 3, 2014 and effective January 2, 2015 under NPDES permit number WAR001129 (the "2015 Permit"). The 2015 Permit expired on December 31, 2019 and was replaced with the subsequent iteration of the ISGP, effective January 1, 2020 and set to expire on

December 31, 2024. Ecology granted Neil Jones coverage under the 2020 Permit, maintaining the same permit number, WAR001129 (the "2020 Permit").

Neil Jones has violated and continues to violate the terms and conditions of the 2015 Permit and 2020 Permit (collectively, the "Permits") with respect to the operation of, and discharges of stormwater and pollutants from, its facility located at or near 1701 West 16th Street, Vancouver, Washington 98660 (the "facility"), where it operates a fruit canning and juice concentrate facility. The facility subject to this notice includes all contiguous or adjacent properties owned, leased, and/or operated by Neil Jones.

## I.    COLUMBIA RIVERKEEPER'S COMMITMENT TO PROTECTING A FISHABLE AND SWIMMABLE COLUMBIA RIVER.

Columbia Riverkeeper's mission is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. Columbia Riverkeeper is a non-profit organization with members who live, recreate, and work throughout the Columbia River basin, including near and downstream of Neil Jones.

Threats facing the Columbia River are severe by any measure. *See Columbia River Basin State of the River Report for Toxics*, Environmental Protection Agency, Region 10 (January 2009) (available online at: https://www.epa.gov/sites/production/files/documents/columbia_state_of_the_river_report_jan2009.pdf). In fact, the vast majority of rivers and streams in Washington fail to meet based state water quality standards for pollutants such as toxics and temperature. *See* State of Washington 303(d) List (available online at: https://ecology.wa.gov/Water-Shorelines/Water-quality/Water-improvement/Assessment-of-state-waters-303d). Water quality standards are designed to protect designated uses, including aquatic life, fishing, swimming, and drinking water.

Stormwater runoff is "one of the great challenges of water pollution control" and "is a principal contributor to water quality impairment of waterbodies nationwide." *See Urban Storm Management in the United States*, National Research Council (Oct. 15, 2008) (available online at: http://www.epa.gov/npdes/pubs/nrc_stormwaterreport.pdf). When rain sends runoff across streets, construction projects, and industrial facilities, the water picks up contaminants that are drained into waterways such as the Columbia River and its tributaries. To address this leading cause of water quality impairment, Columbia Riverkeeper invests significant time and resources in reducing pollutant loads from industrial, municipal, and construction stormwater sources.

This Notice of Intent to Sue Neil Jones is part of Columbia Riverkeeper's effort to improve water quality in the Columbia River Basin for purposes including swimming, habitat quality, and subsistence, recreational, and commercial fishing. Columbia Riverkeeper has serious concerns about the impacts of Neil Jones' operations and industrial stormwater discharges on the Columbia River. As discussed below, Neil Jones has repeatedly discharged contaminates in excess of the Permits' benchmarks while failing to implement the required corrective actions and failed to adopt and implement a SWPPP that satisfies the requirements of Washington's ISGP. Neil Jones' operations and stormwater discharges degrade water quality in the Columbia River

2

Basin and may contribute to conditions that place the health of those who use the Columbia River at risk.

## II.     VIOLATIONS OF STANDARDS.

### A.     Violation of Water Quality Standards.

Condition S10.A of the Permits prohibits discharges that cause or contribute to violations of water quality standards. Water quality standards are the foundation of the CWA's and Washington's efforts to protect clean water. Water quality standards represent the U.S. Environmental Protection Agency's ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse impacts on fish and other beneficial uses.

A discharger must comply with both narrative and numeric water quality standards. WAC 173-201A-010; *see also* WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria . . . ."). Narrative water quality standards provide legal mandates that supplement the numeric standards. Furthermore, narrative water quality standards apply with equal force, even when Ecology has established numeric water quality standards. Specifically, Condition S10.A of the Permits requires that Neil Jones neither cause nor contribute to violations of Washington's water quality standards.

Neil Jones discharges industrial stormwater into the Columbia River via ditches, pipes, stormwater ponds, and other discrete conveyances and features of the facility's stormwater system. Neil Jones discharges stormwater that contains elevated levels of zinc, turbidity, and copper. *See* Table 1, below. These discharges cause and/or contribute to violations of water quality standards for zinc, turbidity, copper, and aesthetic criteria in the Columbia River and have occurred each and every day during the last five years on which there was 0.1 inch or more of precipitation, and continue to occur. These water quality standards include those set forth in WAC 173-201A-200; -240; and -260(2).

| Table 1: Neil Jones' Stormwater Monitoring Data | | | | | |
|---|---|---|---|---|---|
| **Monitoring Period** | **Turbidity** Benchmark: 25 NTU | **Oil Sheen** Benchmark: no | **Total Copper** Benchmark: 14 µg/L | **Total Zinc** Benchmark: 117 µg/L | **Nitrate/Nitrite** Benchmark: 0.68 mg/L |
| 1st Quarter 2017 | 5.99 | No | 0 | 26.1 | 0 |
| 2nd Quarter 2017 | 1.61 | No | 3.26 | 40.2 | .059 |
| 3rd Quarter 2017 | 24.7 | No | 11.3 | 98.8 | 0 |
| 4th Quarter 2017 | 16 | No | 13.8 | **195** | 0 |
| 1st Quarter 2018 | 17.7 | No | 5.55 | 69.1 | 0 |
| 2nd Quarter 2018 | **27** | No | **19.1** | 154 | 0 |
| 3rd Quarter 2018 | ND | ND | ND | ND | ND |
| 4th Quarter 2018 | N/A | N/A | N/A | N/A | N/A |
| 1st Quarter 2019 | 5.24 | No | 7.98 | **122** | 0 |
| 2nd Quarter 2019 | **27** | No | 11.4 | 114 | 0 |

| | | | | |
|---|---|---|---|---|
| 3rd Quarter 2019 | 17.29 | No | 11.9 | 95.9 | 0 |
| 4th Quarter 2019 | 10.4 | No | 4.03 | 68.2 | 0 |
| 1st Quarter 2020 | E | E | **H \| 23.1** | **H \| 364** | **.932** |
| 2nd Quarter 2020 | J \| 0 | J \| 0 | **J \| 27.0** | **H \| 221** | J \| .472 |
| 3rd Quarter 2020 | E | E | **22.0** | **175** | .1 |
| 4th Quarter 2020 | E | E | E | E | E |
| 1st Quarter 2021 | E | E | E | E | E |
| 2nd Quarter 2021 | ND | ND | ND | ND | ND |
| 3rd Quarter 2021 | ND | ND | ND | ND | ND |
| 4th Quarter 2021 | E | E | E | E | E |
| 1st Quarter 2022 | E | E | **16.4** | **372** | .091 |
| 2nd Quarter 2022 | E | E | 11.1 | **139** | **1.54** |
| 3rd Quarter 2022 | ND | ND | ND | ND | ND |
| 4th Quarter 2022 | **80.2; 94.6 Average: 87.4** | J | **18.9; 22.1 Average: 20.5** | **286; 248 Average: 267** | B \| .05; .247 Average: .1485 |
| 1st Quarter 2023 | 48.7 | Yes | 21.4 | 245 | 1.4 |

Monitoring results shown in **Bold** exceed the Permits' benchmarks
J: DMR represents the monitoring result was below the quantitation level
B: DMR represents the monitoring result was below the detection limit/no detection
ND: DMR represents that there was no discharge from the facility
E: DMR represents that an analysis was not complete/not conducted/not reported
H: DMR represented estimated value is "greater than"
N/A: No DMR in file

### B.    Violations of Permitting Standards.

Condition S10.C of the Permits requires Neil Jones to apply all known and reasonable methods of pollution prevention, control, and treatment ("AKART") to all discharges, including preparing and implementing an adequate SWPPP and best management practices ("BMPs"). Neil Jones has violated and continues to violate this condition by failing to apply AKART to its discharges by, among other things, failing to implement an adequate SWPPP and BMPs as evidenced by the elevated levels of pollutants in its discharge indicated in Table 1 above and as described below. These violations have occurred on each and every day during the last 5 years and continue to occur every day.

### III.   STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS.

Columbia Riverkeeper hereby provides notice, based upon information and belief, that Neil Jones has not developed and implemented a SWPPP that complies with the requirements of the Permits. The extensive violations of the Permits and the ongoing discharges of polluted industrial stormwater documented in the publicly available records indicate that Neil Jones is not fully implementing a SWPPP that includes adequate BMPs and that otherwise includes all of the required SWPPP components. The violations of the Permits' SWPPP provisions described below have occurred each and every day over the last five years and continue to occur each day.

4

Condition S3.A of the Permits requires Neil Jones to develop and implement a SWPPP as specified in the Permits and to update the SWPPP as necessary to maintain compliance with the Permits. Conditions S3.A.2 of the 2015 Permit and S3.A.1 of the 2020 Permit require the SWPPP to specify the BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards. On information and belief, Neil Jones violated these requirements of the Permits by failing to prepare a SWPPP that includes AKART BMPs, BMPs necessary to meet state water quality standards, and that is otherwise fully consistent with the Permits, by failing to fully implement a SWPPP, and by failing to update a SWPPP as necessary. Condition S3.A.3.c of the 2020 Permit requires Neil Jones' SWPPP to be updated to be consistent with the 2020 Permit by January 30, 2020. Neil Jones has violated Condition S3.A.3.c by failing to timely update and certify the facility's SWPPP by January 30, 2020.

On information and belief, the SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe the necessary BMPs. Condition S3.B.4 of the Permits requires that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.B.4 of the Permits requires that the SWPPP detail how and where the selected BMPs will be implemented. Condition S3.A.3 of the 2015 Permit and Condition S3.A.2 of the 2020 Permit require that the SWPPP include BMPs consistent with approved stormwater technical manuals (or document how stormwater BMPs included in the SWPPP are demonstrably equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs). Neil Jones' SWPPP does not comply with these requirements because it does not adequately describe and explain in detail the BMPs selected, does not include BMPs consistent with approved stormwater technical manuals, and/or does not include BMPs that are demonstrably equivalent to approved BMPs with documentation of BMP adequacy.

Neil Jones' SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it fails to include a site map that includes all required components. The SWPPP does not comply with Condition S3.B.1 of the 2015 Permit because it does not include a site map that identifies: the scale or include relevant distances between significant structures and drainage systems; significant features; the stormwater drainage and discharge structures; the stormwater drainage areas for each stormwater discharge point off-site with a unique identifying number for each discharge point; each sampling location with a unique identifying number; paved areas and buildings; areas of pollutant contact associated with specific industrial activities; conditionally approved non-stormwater discharges; surface water locations; areas of existing and potential soil erosion; vehicle maintenance areas; and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes. The SWPPP does not comply with Condition S3.B.1 of the 2020 Permit because it does not include a site map that identifies: the scale or includes relative distances between significant structures and drainage systems; size of the property in acres; location and extent of all buildings, structures and all impervious surfaces; direction of the stormwater flow; locations of all structural source control BMPs and all receiving water in the immediate vicinity of the facility; conditionally approved non-stormwater discharges; areas of existing and potential soil erosion that could result in the discharge of a significant amount of turbidity, sediment, or other pollutants; locations of all stormwater

5

conveyances including ditches, pipes, catch basins, vaults, ponds, swales, etc.; locations of actual and potential pollutant sources; locations of all stormwater monitoring points; stormwater drainage areas for each stormwater discharge point off site (including discharges to groundwater); locations of stormwater inlets and outfalls with a unique identification number for each sampling point and discharge point, indicating any that are identified as substantially identical, and identify, by name, any other party other than Neil Jones that owns any stormwater drainage or discharge structures; combined sewers or MS4s and where stormwater discharges to them; locations of fueling and vehicle maintenance areas; and locations and sources of run-on to the site from adjacent properties that may contain pollutants.

Neil Jones' SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment that includes: a description of the facility; an inventory of facility activities and equipment that contribute to or have the potential to contribute any pollutants to stormwater; and an inventory of materials that contribute to or have the potential to contribute pollutants to stormwater.

The SWPPP does not comply with Condition S3.B.2.a of the Permits because it does not include a facility description that describes: the industrial activities conducted at the site; the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility; and the regular business hours, and the seasonal variations in business hours or industrial activities.

Neil Jones' SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants. The SWPPP does not identify all areas associated with loading and unloading or dry bulk materials or liquids; outdoor storage of materials or products; outdoor manufacturing and processing; onsite dust or particulate generating processes; on-site waste treatment, storage, or disposal; vehicle and equipment fueling, maintenance, and/or cleaning; roofs or other surfaces exposed to air emissions from a manufacturing building or a process area; and roofs or other surfaces composed of materials that may be mobilized by stormwater, as required by these permit conditions.

Neil Jones' SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials. The SWPPP does not include: an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution; a short narrative for each material describing the potential for pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of pollutants; or a narrative description of any potential sources of pollutants from past activities, materials, and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater, as required. The SWPPP also does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants, as the Permits require.

6

Neil Jones' SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance, and modification.

Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs, and implement, certain mandatory BMPs unless site conditions render the BMP unnecessary, infeasible, or an alternative and equally effective BMP is provided. Neil Jones is in violation of these requirements because it has failed to include in its SWPPP, and implement, the mandatory BMPs required by the Permits, as detailed below.

Neil Jones' SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage and treatment facilities, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs for preventing spills that can contaminate stormwater; for material handling procedures; storage requirements; cleanup equipment and procedures; and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, material management practices, how training will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); and inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, including identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how Neil Jones will comply with signature and record retention requirements, certification of compliance with the SWPPP and Permit, and all inspection reports completed by Neil Jones).

Neil Jones' SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges.

Neil Jones' SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff. Neil Jones' SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

Neil Jones' SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

Neil Jones' SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include an adequate stormwater sampling plan. The SWPPP does not include a

7

sampling plan that: identifies points of discharge to surface waters, storm sewers, or discrete ground water infiltration locations; documents why any discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sample collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantization levels, and analytical methods; or specifies the procedure for submitting the results to Ecology.

## IV.     MONITORING AND REPORTING VIOLATIONS.

### A.     Failure to Collect Quarterly Discharge Samples.

Condition S4.B of the Permits requires Neil Jones to sample its stormwater discharge once during every calendar quarter. Conditions S3.B.5.b and S4.B.2.c of the 2015 Permit and Conditions S3.B.5.b and S4.B.3 of the 2020 Permit require Neil Jones to collect stormwater samples at each distinct point of discharge offsite, except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled. These conditions set forth sample collection criteria, but require the collection of a sample even if the criteria cannot be met. Neil Jones has violated these permit conditions each and every time it has failed to collect stormwater samples in compliance with the requirements of the Permits, including but not limited to the instances described below. Each failure to collect a sample of a required pollutant is a separate violation of the CWA.

Neil Jones violated these requirements by failing to collect stormwater samples at any of its discharge points during the third and fourth quarters of 2018; fourth quarter of 2020; first, second, third, and fourth quarter of 2021; and third quarter of 2022. Neil Jones also violated and continues to violate these conditions because the facility discharges from distinct points of discharge that are not monitored and that are not substantially identical to the outfall that is monitored by Neil Jones. These violations have occurred and continue to occur each and every quarter during the last five years that Neil Jones was and is required to sample its stormwater discharges, including the quarters in which it collected stormwater discharge samples from some, but not all, points of discharge. These violations will continue until Neil Jones commences monitoring all points of discharge that are not substantially identical.

### B.     Failure to Analyze Quarterly Samples.

Conditions S5.A and S5.B of the Permits require Neil Jones to analyze all quarterly stormwater samples for turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous. Under the "consistent attainment" provisions of Condition S4.B.6 of the 2015 Permit, sample analysis for a parameter (other than oil sheen) may be discontinued for a period of three years following eight consecutive quarters where samples complied with the applicable benchmark value for that parameter. Under the "consistent attainment" provisions of Condition S4.B.7 of the 2020 Permit, sample analysis for a parameter (other than oil sheen) may be reduced to one annual discharge in the fourth quarter for a period of three years following eight consecutive quarters where samples complied with the applicable benchmark value for that parameter. Under Condition S4.B.6.b.i of the 2015 Permit and

Condition S4.B.7.b.i of the 2020 Permit, the tally of consecutive quarterly samples is reset to zero where Neil Jones fails to collect a discharge sample in a quarter where a discharge occurred during normal working hours and in safe conditions. Neil Jones violated these requirements by failing to analyze discharge samples for the parameters as identified in Table 2 below, which includes instances where Neil Jones improperly claimed analysis was not required under the Permits' consistent attainment provisions.

| Table 2: Pollutant Parameters Not Analyzed ||
| Monitoring Period | Parameters Not Analyzed |
| --- | --- |
| 3rd Quarter 2018 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 4th Quarter 2018 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 1st Quarter 2020 | turbidity, pH, oil sheen, and $BOD_5$ |
| 2nd Quarter 2020 | turbidity and oil sheen |
| 3rd Quarter 2020 | turbidity, pH, and oil sheen |
| 4th Quarter 2020 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 1st Quarter 2021 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 2nd Quarter 2021 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 3rd Quarter 2021 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 4th Quarter 2021 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 1st Quarter 2022 | turbidity, pH, and oil sheen |
| 2nd Quarter 2022 | turbidity, pH, and oil sheen |
| 3rd Quarter 2022 | turbidity, pH, oil sheen, total copper, total zinc, $BOD_5$, nitrate/nitrite as nitrogen, and total phosphorous |
| 4th Quarter 2022 | oil sheen |
| 1st Quarter 2023 | pH |

### C.    Failure to Comply with Visual Monitoring Requirements.

Condition S7.A of the Permits requires that monthly visual inspections be conducted at the facility by qualified personnel. Each inspection is to include: observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged; observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges; observations for the presence of illicit discharges; a verification that the descriptions of potential pollutant sources required by the permit are accurate; a verification that the site map in the SWPPP reflects current conditions; and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs

inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed).

Condition S7.C of the Permits requires that Neil Jones record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required. The report/checklist must include: the time and date of the inspection; the locations inspected; a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permit; a summary report and schedule of implementation of the remedial actions that Neil Jones plans to take if the site inspection indicates that the facility is out of compliance; the name, title, signature, and certification of the person conducting the facility inspection; and a certification and signature of the responsible corporate officer or a duly authorized representative.

Neil Jones is in violation of these requirements of Condition S7 of the Permits because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

### D.     Failure to Timely Report.

Condition S9.A of the 2015 Permit and Condition S9.B of the 2020 Permit require Neil Jones to use DMR forms provided or approved by Ecology to summarize, report, and submit monitoring data to Ecology. For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period using the Water Quality Permitting Portal. Neil Jones has violated these conditions by failing to timely submit DMRs throughout the past five years. For example, Neil Jones failed to submit a DMR for the fourth quarter of 2018; and Neil Jones failed to submit DMRs within the time prescribed for the first, second, third, and fourth quarters of 2020, the first, second, third, and fourth quarters of 2021, first, third, and fourth quarters of 2022, and first quarter of 2023.

As explained below in Section VI, Condition S9.B of the 2015 Permit and Condition S9.C of the 2020 Permit require Neil Jones to submit a complete and accurate annual report to Ecology no later than May 15 of each year using Ecology's Water Quality Permitting Portal, and Neil Jones has violated this requirement by submitting untimely annual reports for the 2018 monitoring year (due May 15, 2019), the 2019 monitoring year (due May 15, 2020), the 2020 monitoring year (due May 15, 2021), and the 2021 monitoring year (due May 15, 2022), and by failing to submit an annual report for the 2022 monitoring year (due May 15, 2023).

### E.     Failure to Properly Sign and Certify Reports.

General Condition G2.B of the Permits requires a responsible corporate officer or a duly authorized representative of Neil Jones to sign all reports required by the Permits and other information requested by Ecology. A person is a duly authorized representative only if an authorization is made in writing by a responsible corporate officer and submitted to Ecology, and the authorization specifies either an individual or a position having responsibility for the overall

operation of the facility. General Condition G2.C of the Permits requires Neil Jones to change the duly authorized representative if the authorization under General Condition G2.B is no longer accurate because a different individual or position has responsibility for the overall operation of the facility. To do so, Neil Jones must submit a new authorization to Ecology satisfying the requirements of General Condition G2.B prior to, or together with, any reports, information, or applications to be signed by an authorized representative. General Condition G2.D of the Permits requires any person signing a document under General Condition G2 to make the following certification: "I certify under penalty of law, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gathered and evaluated the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

Neil Jones has violated the requirements described above every time the Permits required reports or Ecology requested other information, and those reports or other information were not signed and certified by a responsible corporate officer or duly authorized representative throughout the past five years. For example, Neil Jones has violated these requirements by failing to have a responsible corporate officer or duly authorized representative sign and certify Neil Jones' annual reports for the 2018 monitoring year (due May 15, 2019), the 2019 monitoring year (due May 15, 2020), the 2020 monitoring year (due May 15, 2021), the 2021 monitoring year (due May 15, 2022), and the 2022 monitoring year (due May 15, 2023). Upon information and belief, Neil Jones has violated these requirements for every quarterly DMR required under the Permits in the last five years because Neil Jones did not submit a DMR for the fourth quarter of 2018 that was signed and certified, and because for the DMRs Neil Jones has submitted throughout the past five years, those who signed and certified those DMRs, including Mark Dee, Kyle Bussey, and Don Carr, were not and are not responsible corporate officers or duly authorized representatives.

## V. CORRECTIVE ACTION VIOLATIONS.

### A. Failure to Implement Level One Corrective Actions.

Condition S8.B of the Permits requires Neil Jones take specified actions, called "Level One Corrective Action," each time quarterly stormwater sample results exceed any of the benchmark values described in Conditions S5.A and S5.B. Condition S8.A of the 2020 Permit requires Neil Jones to implement any Level One Corrective Action required by the 2015 Permit

For a Level One Corrective Action, Condition S8.B.1.a of the Permits requires Neil Jones to "[c]onduct an inspection to investigate the cause" of the benchmark exceedance. Additionally, for a Level One Corrective Action, Condition S8.B of the Permits requires Neil Jones to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and

certify the revised SWPPP in accordance with the Permits; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the 2015 Permit and Condition S9.C of the 2020 Permit. Condition S8.B of the Permits requires Neil Jones to implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A and Table 2 of the Permits establish the following applicable benchmarks: turbidity—25 NTU; total copper—14 µg/L; total zinc—117 µg/L; oil sheen—no visible oil sheen. Condition S5.B and Table 3 of the Permits establish the following applicable benchmark: nitrate + nitrite—0.68 mg/L.

Neil Jones violated the Level One Corrective Action requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required investigation, the required review, revision, and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time in the past five years that quarterly stormwater sampling results were greater than a benchmark, including such the benchmark excursions during that time (since and including the second quarter of 2018) that are listed in Table 1 in Section II.A of this letter.

These benchmark excursions are based upon information currently available to Columbia Riverkeeper from Ecology's publicly available records. Columbia Riverkeeper provides notice of its intent to sue Neil Jones for failing to comply with all of the Level One Corrective Action requirements described above each time during the last five years that quarterly stormwater sampling results were greater than a benchmark.

**B.      Failure to Implement Level Two Corrective Actions.**

Condition S8.C of the Permits requires Neil Jones take specified actions, called "Level Two Corrective Action," each time quarterly stormwater sample results exceed any of the benchmark values described in Conditions S5.A and S5.B for any two quarters in a calendar year. Condition S8.A of the 2020 Permit requires that Neil Jones implement any Level Two Corrective Action required by the 2015 Permit.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires Neil Jones: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3 of the Permits; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.B of the Permits. Condition S8.C.4 of the Permits requires that Neil Jones implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, but no later than August 31 of the following year.

The Permits establish the benchmarks applicable to Neil Jones described in Section V.A of this notice of intent to sue letter.

Neil Jones violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with permit conditions—including the required review, revision, and certification of the SWPPP; the required implementation of additional BMPs to ensure that all points of discharge from the facility meet benchmarks (not just the sampled point of discharge), including additional structural source control BMPs; and the required summarization in the annual report—each time since and including 2017 that Neil Jones' quarterly stormwater sampling results were greater than a benchmark for any two quarters during a calendar year. As indicated in Table 1 in Section II.A of this letter, these violations include, but are not limited to, Neil Jones' failure to fulfill these obligations triggered by the exceedances in 2022 for total copper.

The benchmark excursions identified in Table 1 of this letter are based upon information currently available to Columbia Riverkeeper and from Ecology's publicly available records. Columbia Riverkeeper provides notice of its intent to sue Neil Jones for failing to comply with all of the Level Two Corrective Action requirements each and every time quarterly stormwater sample results exceeded an applicable benchmark value for any two quarters during a calendar year, including any such excursions that are not reflected in Table 1 above, since and including 2017.

### C.    Failure to Implement Level Three Corrective Actions.

Condition S8.D of the Permits requires Neil Jones take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value for any three quarters during a calendar year. Condition S8.A of the 2020 Permit requires that Neil Jones implement any Level Three Corrective Action required by the 2015 Permit.

As described by Condition S8.D of the Permits, a Level Three Corrective Action requires Neil Jones to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs; and (3) summarize the Level Three Corrective Action (planned or taken) in the Annual Report required under Condition S9.B of the 2015 Permit and Condition S9.C of the 2020 Permit, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced, or if new/additional treatment BMPs will be installed.

Condition S8.D.2 of the Permits requires that a Qualified Industrial Stormwater Professional review the revised SWPPP, sign the SWPPP Certification Form, and certify that it is reasonably expected to meet the ISGP benchmarks upon implementation. Additionally, Condition S8.D.3 of the Permits requires that, before installing any BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, Neil Jones submit an engineering report, certified by a

13

licensed professional engineer, to Ecology for review. The report must contain: (1) a brief summary of the treatment alternatives considered and why the proposed option was selected, including cost estimates of ongoing operation and maintenance and disposal of any spent media; (2) the basic design data, including characterization of stormwater influent and sizing calculations for the treatment units; (3) a description of the treatment process and operation, including a flow diagram; (4) the amount and kind of chemicals used in the treatment process, if any; (5) the expected results from the treatment process including the predicted stormwater discharge characteristics; and (6) a statement, expressing sound engineering justification— through the use of pilot plant data, results from similar installations, and/or scientific evidence— that the proposed treatment is reasonably expected to meet the permit benchmarks. The engineering report must be submitted no later than the May 15 prior to the Level Three Corrective Action Deadline. Condition S8.D.3.c of the Permits requires that an operations and maintenance manual be submitted to Ecology at least 30 days after construction/installation is complete.

Condition S8.D.5 of the Permits requires that Neil Jones fully implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, but no later than September 30 of the following year.

The Permits establish the benchmarks applicable to Neil Jones described in Section V.A of this notice of intent to sue letter.

Neil Jones violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with applicable permit conditions—including the required review, revision and certification of the SWPPP, including the requirement to have a specified professional design and stamp the portion of the SWPPP pertaining to treatment; the required implementation of additional BMPs, including additional treatment BMPs to ensure that all points of discharge from the facility meet benchmarks (not just the sampled point of discharge); the required submission of an engineering report, plans, specifications, and an operations and maintenance plan; and the required summarization in the annual report—each time since and including 2017 that Neil Jones' quarterly stormwater sampling results were greater than a benchmark for any three quarters during a calendar year. As indicated in Table 1 in Section II.A of this letter, these violations include, but are not limited to, Neil Jones' failure to fulfill these obligations triggered by exceedances of the benchmark for total zinc and total copper in 2020 and total zinc in 2022.

The benchmark excursions identified in Table 1 are based upon information currently available to Columbia Riverkeeper from Ecology's publicly available records. Columbia Riverkeeper provides notice of its intent to sue Neil Jones for failing to comply with all of the Level Three Corrective Action requirements each and every time quarterly stormwater sample results exceeded an applicable benchmark value for any three quarters during a calendar year, including any such excursions that are not discussed herein, since and including 2017.

## VI.    ANNUAL REPORT VIOLATIONS.

Condition S9.B of the 2015 Permit and Condition S9.C of the 2020 Permit require Neil Jones to submit complete and accurate annual reports to Ecology no later than May 15 of each year using Ecology's Water Quality Permitting Portal. These conditions require that the annual reports include corrective action documentation required under Conditions S8.B through S8.D and, if corrective action is not complete, Neil Jones must describe the status of any outstanding corrective actions. Each annual report must: (1) identify the condition triggering the need for corrective action review; (2) describe the problem(s) and identify the dates they were discovered; (3) summarize any Level One, Two, and/or Three corrective actions completed during the previous calendar year and include the dates of completion; and (4) describe the status of any Level Two or Three corrective actions triggered during the previous calendar year and identify the date of expected completion. Neil Jones must also retain a copy of all annual reports onsite. Neil Jones violated the requirements of the Permits described above by failing to timely submit complete and accurate annual reports that include all of the required information for each monitoring year since and including 2018. The deficiencies include, but are not limited to, those identified below.

The annual report submitted for the 2018 monitoring year (due May 15, 2019) was untimely; fails to identify the condition triggering the Level One Corrective Action for turbidity, total copper, and total zinc; fails to describe the problem(s) identified and the dates they were discovered; and fails to summarize the Level One corrective actions completed during the previous calendar year and include the dates of completion for turbidity, total copper, and total zinc.

The annual report submitted for the 2019 monitoring year (due May 15, 2020) was untimely; fails to identify the conditions triggering the Level One Corrective Actions for turbidity and total zinc; fails to describe the problem(s) identified and the dates they were discovered; and fails to summarize the Level One corrective actions completed during the previous calendar year and include the dates of completion for turbidity and total zinc.

The annual report submitted for the 2020 monitoring year (due May 15, 2021) was untimely; fails to identify the conditions triggering the Level One Corrective Actions for total copper, total zinc, and nitrate + nitrite; fails to identify the conditions triggering the Level Three Corrective Actions for total copper and total zinc; fails to describe the problem(s) identified and the dates they were discovered; fails to summarize the Level One Corrective Actions completed during the previous calendar year and include the dates of completion for total copper, total zinc and nitrate + nitrite; fails to summarize the Level Three Corrective Actions completed during the previous calendar year and include the dates of completion for total copper and total zinc; and fails to describe the status of the ongoing Level Three Corrective Actions triggered during the previous calendar year and identify the date of expected completion for total copper and total zinc.

The annual report submitted for the 2021 monitoring year (due May 15, 2022) was untimely; fails to describe the problem(s) identified and the dates they were discovered; and fails summarize the Level Three Corrective Actions submitted completed during the previous

calendar year and include the dates of completion for total copper and total zinc; and fails to describe the status of the Level Three Corrective Actions triggered during the 2020 calendar year and identify the date of expected completion for total copper and total zinc.

Neil Jones has failed to timely submit an annual report for the 2022 monitoring year (due May 15, 2023) that includes all of the required information identified above.

## VII.   VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS.

### A.   Failure to Record Information.

Condition S4.B.3 of the 2015 Permit and Condition S4.B.4 of the 2020 Permit require Neil Jones to record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Neil Jones collected the sample within the first 12 hours of stormwater discharge event, an explanation of why Neil Jones could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and preservation, and the individual performing the sampling. Condition S4.B.3 of the 2015 Permit also requires Neil Jones to record weather conditions. Upon information and belief, Neil Jones violated and violates these conditions because it failed to record each of these specified items for each sample taken during the last five years.

### B.   Failure to Retain Records.

Condition S9.C of the 2015 Permit and Condition S9.D of the 2020 Permit require Neil Jones to retain, for a minimum of five years, a copy of the Permits, a copy of Neil Jones' coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permits. Upon information and belief, Neil Jones is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## VIII.   FAILURE TO REPORT PERMIT VIOLATIONS.

Condition S9.E of the 2015 Permit and Condition S9.F of the 2020 Permit require Neil Jones to take certain actions in the event Neil Jones is unable to comply with any of the terms and conditions of the Permit which may endanger human health or the environment, or exceed any numeric effluent limitation in the permit. In such circumstances, Neil Jones must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and Neil Jones must immediately notify the appropriate Ecology regional office of the failure to comply. Neil Jones must then submit a detailed written report to Ecology, including specified details, within 5 days of the time Neil Jones became aware of the circumstances unless Ecology requests an earlier submission.

Neil Jones has repeatedly violated these requirements, including each and every time Neil Jones failed to comply with the corrective action requirements described in Section V of this notice of intent to sue and every time Neil Jones discharged stormwater with concentrations of pollutants that are likely to cause or contribute to violations of water quality standards as described herein. All these violations may endanger human health or the environment.

## IX.    REQUEST FOR SWPPP.

Pursuant to Condition S9.G of the 2020 Permit, Columbia Riverkeeper hereby requests that Neil Jones provide Columbia Riverkeeper a copy of, or access to, Neil Jones' SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to Emma Bruden at the address below.

Should Neil Jones fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the 2020 Permit, Neil Jones will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any resulting lawsuit.

## X.    PARTY GIVING NOTICE OF INTENT TO SUE.

The full name, address, and telephone number of the party giving notice is:

Columbia Riverkeeper
2621 Wasco Street, Suite A
Hood River, Oregon 97031
(541) 399-5312

## XI.    ATTORNEYS REPRESENTING COLUMBIA RIVERKEEPER.

The attorneys representing Columbia Riverkeeper in this matter are:

Simone Anter, Staff Attorney
Columbia Riverkeeper
P.O. Box 950
Hood River, Oregon 97031
(541) 399-5312
simone@columbiariverkeeper.org

Brian A. Knutsen
Emma A. O. Bruden
Kampmeier & Knutsen, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515 (Knutsen)
(503) 719-5641 (Bruden)
brian@kampmeierknutsen.com
emma@kampmeierknutsen.com

17

## XII.   CONCLUSION.

The above-described violations reflect those indicated by the information currently available to Columbia Riverkeeper based on its review of the public record. These violations are ongoing. Columbia Riverkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C § 1319(d), Neil Jones is subject to a separate daily penalty assessment for each violation. The current maximum daily penalty assessment for violations is $64,618 per violation per day. 40 C.F.R. § 19.4. In addition to civil penalties, Columbia Riverkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Columbia Riverkeeper believes that this Notice of Intent to Sue sufficiently states grounds for filing suit. Columbia Riverkeeper intends, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Neil Jones under Section 505(a) of the CWA for the violations described herein.

Columbia Riverkeeper is willing to discuss effective remedies for the violations described in this letter and settlement terms during the 60-day notice period. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within ten (10) days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends. If you believe that any of the allegations in this Notice are incorrect or based on incomplete information in the public record, please bring those facts to our attention.

Very truly yours,

KAMPMEIER & KNUTSEN, PLLC

By: _Emma Bruden_
     Emma A. O. Bruden

cc.   Simone Anter, Columbia Riverkeeper Staff Attorney

18

## CERTIFICATE OF SERVICE

I, Emma A. O. Bruden, declare under penalty of perjury of the laws of Washington and

the United States that I am counsel for Columbia Riverkeeper and that on July 5, 2023, I caused

copies of the foregoing Notice of Intent to Sue Under the Clean Water Act and Request for Copy

of Stormwater Pollution Prevention Plan to be served on the following by depositing them with

the United States Postal Service, certified mail, return receipt requested, postage prepaid:

Managing Agent
Neil Jones Food Co.
1701 West 16th Street
Vancouver, Washington 98660

Managing Agent
Neil Jones Food Co.
P.O. Box 30
Vancouver, Washington 98666-0030

Managing Agent
Neil Jones Food Co.
d/b/a/ Northwest Packing Co.
1701 West 16th Street
Vancouver, Washington 98660

Managing Agent
Neil Jones Food Co.
d/b/a/ Northwest Packing Co.
P.O. Box 30
Vancouver, Washington 98666-0030

Managing Agent
Northwest Packing Co.
1701 West 16th Street
Vancouver, Washington 98660

Managing Agent
Northwest Packing Co.
P.O. Box 30
Vancouver, Washington 98666-0030

Administrator Michael S. Regan
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., N.W. (Mail Code 1101A)
Washington, D.C. 20460

Regional Administrator Casey Sixkiller
U.S. Environmental Protection Agency, Region 10
1200 Sixth Avenue, Suite 155
Seattle, Washington 98101

Director Laura Watson
Washington Department of Ecology
P.O. Box 47600
Olympia, Washington 98504-7600

J. Matthew Jones, Registered Agent
1701 West 16th Street
Vancouver, Washington 98660-0000

_____
Emma A. O. Bruden, WSBA No. 56280

19